**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

WHITE KNIGHT DINER, LLC, et al.,    )
                                   )
           Plaintiffs,         )
                                   )  Case No. 4:17-cv-02406-JAR
                                   )
v.                                   )
                                 )
ARBITRATION FORUMS, INC., et. al.,    )
                                 )
          Defendants.      )

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiffs and for their cause of action, on their behalf, and on behalf of all others similarly situated, against Defendants Arbitration Forums, Inc., State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, Safeco Insurance Company of Illinois, Owners Insurance Company, Acuity, A Mutual Insurance Company, Automobile Club Inter-Insurance Exchange, and Zurich American Insurance Company, and other entities not named, but similarly situated, state as follows:

**INTRODUCTION**

1.      At the time this action was initially filed in the Circuit Court of the City of St. Louis, State of Missouri, all of the named Plaintiffs were either citizens of the State of Missouri (the individual Plaintiffs) or Missouri limited liability companies whose members were all citizens of the State of Missouri.

2.      All of the named Plaintiffs were covered by policies of casualty insurance that were issued to them in the State of Missouri by various individual insurance company Defendants.  Said policies included coverage for property damage.

3.      All of the named Plaintiffs suffered property damage as a result of incidents that occurred in the State of Missouri for which they made property damage claims pursuant to the insurance policy that they all had with their individual insurance company Defendants.  All of those property damage claims were paid in part by the Plaintiffs' insurance companies, again, all in the State of Missouri.

4.      Following the aforementioned payments, those insurance companies made "subrogation claims" either directly or through Defendant Arbitration Forums to the insurance companies that issued liability insurance policies to the tortfeasors whose negligence caused the property damage suffered by the named Plaintiffs.

5.      The aforementioned "subrogation claims" were, and continue to be, illegal in the State of Missouri because in Missouri, subrogation exists only between an insurance company and its insured, and subrogation exists only after the insured has been fully compensated for all losses caused by a tortfeasor including those losses not covered by the policy of insurance issued by the insurers to their insureds, and only after all of the insured's legal expenses, if any, are deducted.

6.      In Missouri, each year for the last five years or longer, the named insurance company Defendants, after paying a portion of the named Plaintiffs' property damage claims, sought reimbursement by way of illegal "subrogation claims" directed to the insurance companies providing insurance coverage to the tortfeasors whose negligence caused the Plaintiffs' property damage.

7.      For the year 2016, in Missouri, the following Defendants paid out the following amounts in property damage claims to their insureds who were citizens of Missouri:

    a.   Defendant State Farm Mutual Automobile Insurance Company: $140,169,301.00

    b.   Defendant Safeco Insurance Company of Illinois: $29,828,446.00

    c.   Defendant Automobile Club Inter-Insurance Exchange of Missouri: $16,328,342.00

    d.   Defendant State Farm Fire and Casualty Company: $13,296,848.00

    e.   Defendant Owners Insurance Company: $2,262,980.00

    f.   Defendant Acuity, A Mutual Insurance Company: $807,613.00

8.      For the year 2016, in Missouri, the following Defendants paid out the following amounts in illegal "subrogation claims":[1]

    a.   Defendant State Farm Mutual Automobile Insurance Company: $110,459,740.00

    b.   Defendant Safeco Insurance Company of Illinois: $21,903,399.00

    c.   Defendant Automobile Club Inter-Insurance Exchange of Missouri: $24,513,813.00

    d.   Defendant State Farm Fire and Casualty Company: $13,710,927.00

    e.   Defendant Owners Insurance Company: $1,516,532.00

    f.   Defendant Acuity, A Mutual Insurance Company: $822,884.00

9.      The illegal "subrogation claims" paid by the insurance company Defendants were, and continue to be, facilitated largely by and through Defendant Arbitration Forums.

---

[1] As reported to Missouri Department of Insurance as 2016 Private Passenger Auto Liability Property Damage.

3

10.     The insurance company Defendants, acting by and through Defendant Arbitration Forums, presented "subrogation claims" against the insurance companies that issued policies to third party tortfeasors, without the consent of Plaintiff insureds, and despite Missouri law which does not permit such activity.

11.     Plaintiffs have been damaged by the unlawful practices of their Defendant insurance companies, insurance companies for third-party tortfeasors, and Arbitration Forums, by, *inter alia*, their insurance companies making "subrogation claims," purportedly on their behalf but without their consent, proceeding with these "subrogation claims" through arbitration without their consent, failing to fully compensate Plaintiffs, and withholding from Plaintiffs their deductibles, and only paying a portion of Plaintiffs' covered property losses.

<u>**PARTIES**</u>

12.     Plaintiffs White Knight Diner, LLC and Interventional Pain Institute LLC are Missouri limited liability companies who, within the last five years, suffered damage to real property in Missouri as a result of the negligence of third party tortfeasors not named in this action.

13.     Plaintiffs William Wendling, Dr. Robert Thomure, DDS, Kathleen Thomure, Jay Kiesewetter, Barbara Myers, Victoria Martin, Larry Lee Hinds, and Karen Freiner are residents and citizens of the State of Missouri who, within the last five years, suffered damage to personal property in Missouri as a result of the negligence of third party tortfeasors not named in this action.

14.     Defendant State Farm Mutual Automobile Insurance Company ("State Farm Mutual") is a foreign insurance company duly authorized and existing in accordance with the

laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

15.     Defendant State Farm Fire and Casualty Company ("State Farm Fire") is a foreign insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

16.     Defendant Owners Insurance Company ("Owners") is a foreign insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty liability insurance in the State of Missouri.

17.     Defendant Safeco Insurance Company of Illinois ("Safeco") is a foreign insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

18.     Defendant Zurich American Insurance Company ("Zurich") is a foreign insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

19.     Defendant Acuity, A Mutual Insurance Company ("Acuity") is a foreign insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

20.     Defendant Automobile Club Inter-Insurance Exchange ("AAA") is a Missouri insurance company duly authorized and existing in accordance with laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

21.     Defendant Arbitration Forums, Inc. ("Arbitration Forums") is a foreign not-for-profit corporation that provides arbitration and subrogation services to the insurance industry in Missouri.

## JURISDICTION AND VENUE

22.     Jurisdiction is proper over the Defendants in the State of Missouri pursuant to R.S.Mo. § 506.500 (in State Court) because the Plaintiffs' causes of arise from transactions of business within the State of Missouri; commission of tortious acts within the State of Missouri; and the contracting to insure property located within the State of Missouri at the time of contracting.  This case was removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), by one or more Defendants.

23.     Plaintiffs assert that the local controversy exception to CAFA at 28 U.S.C. 1332(d)(4) applies to this cause of action.

24.     Venue is proper in St. Louis City Circuit Court pursuant to R.S. Mo. §508.010.

## FACTUAL BACKGROUND

**A. Relationship Between Plaintiff White Knight Diner, LLC, Karen Freiner, Larry Lee Hinds, Defendant Owners and Defendant State Farm Mutual**

25.     On or about March 15, 2015, Plaintiff White Knight Diner, LLC operated a restaurant in a building located in the City of St. Louis that was owned by Plaintiffs Karen Freiner and Larry Lee Hinds.

26.     On or about March 15, 2015, the building sustained damage as a result of an automobile collision involving two tortfeasors.

27.     At the time of the collision, Plaintiffs were insured by a policy of insurance issued by Defendant Owners.

28.     One of the two tortfeasors was insured by a policy of insurance issued by Defendant State Farm Mutual.

29.     After paying a portion of the property damage and business loss covered by their policy, Defendant Owners made a "subrogation claim" directed to Defendant State Farm Mutual, which Defendant State Farm Mutual paid.

30.     On information and belief, the "subrogation claim" made by Defendant Owners and paid by Defendant State Farm Mutual, was facilitated by and through Defendant Arbitration Forums.

31.     The "subrogation claim" and payment on the "subrogation claim" were made without the consent of the Plaintiffs.

**B. Relationship Between Plaintiff Interventional Pain Institute, LLC and Defendant State Farm Fire**

32.     On or about January 10, 2015, a building owned by Plaintiff Interventional Pain Institute, LLC was struck by a negligently operated tour bus in the State of Missouri.

33.     At the time of the collision, Plaintiff Interventional Pain Institute, LLC was insured by a policy of insurance issued by Defendant State Farm Fire.

34.     After paying a portion of the cost of repair of the building pursuant to its policy of insurance, Defendant State Farm Fire directly contacted the insurance carrier for the bus owner, presenting a "subrogation claim," without the consent of Plaintiff Interventional Pain Institute, LLC.

35.     Defendant State Farm Fire then intervened in the underlying action, and filed its own petition for damages which was rejected by the court.

36.     Plaintiff Interventional Pain Institute, LLC settled its case against the tortfeasor and called for a hearing to determine the subrogation interest, if any, of Intervenor State Farm Fire.  State Farm Fire dismissed its Petition to Intervene before that motion could be heard by the Court.

7

**C. Relationship Between Plaintiff William Wendling, Defendant Acuity, and Defendant Zurich**

37.     On or about April 14, 2015, Plaintiff William Wendling was involved in an automobile collision at the intersection of Arsenal Street and McCausland Boulevard, in the City of St. Louis, wherein his vehicle sustained property damage.  Mr. Wendling also suffered personal injury and other damages.

38.     At the time of the collision, Mr. Wendling's vehicle was covered by a policy of insurance issued by Defendant Acuity.  Defendant Acuity paid a portion of Mr. Wendling's property damage pursuant to its policy of insurance.

39.     After paying a portion of Mr. Wendling's property damage, Defendant Acuity made a "subrogation claim" directed to Defendant Zurich, the insurance company for the tortfeasor. All of this was done without the consent of Mr. Wendling.

40.     On information and belief, the "subrogation claim" made by Defendant Acuity and paid by Defendant Zurich, was facilitated by and through Defendant Arbitration Forums.

41.     Thereafter, Defendant Zurich paid Defendant Acuity's subrogation claim in full, again without the consent of Plaintiff.

**D. Relationship Between Plaintiff Jay Kiesewetter, Defendant State Farm Mutual, and Defendant Safeco**

42.     On or about May 5, 2016, Plaintiff Jay Kiesewetter was involved in an automobile collision in the State of Missouri wherein his vehicle sustained significant property damage.  Mr. Kiesewetter also sustained personal injuries and other damages.

43.     At the time of collision, Mr. Kiesewetter was insured by a policy of insurance issued by Defendant State Farm Mutual.  The tortfeasor responsible for the collision was insured by Defendant Safeco.

44.     Defendant State Farm Mutual, without the consent of Mr. Kiesewetter, made a "subrogation claim" directed to Defendant Safeco which Defendant Safeco paid.  Again, all without the consent of Mr. Kiesewetter.

45.     On information and belief, the "subrogation claim" made by Defendant State Farm Mutual and paid by Defendant Safeco, was facilitated by and through Defendant Arbitration Forums.

**E.  Relationship Between Plaintiff Barbara Myers, Defendant Automobile Club Inter-Insurance Exchange ("AAA"), and Defendant Safeco**

46.     On or about January 10, 2012, Plaintiff Barbara Myers, then known as Barbara Phelps, was involved in an automobile collision in the State of Missouri wherein her vehicle sustained property damage and Ms. Myers sustained personal injuries and other damages.

47.     At the time of the collision, Ms. Myers was insured by a policy of insurance issued by Missouri resident Defendant AAA.

48.     Following the collision, pursuant to their policy, Defendant AAA paid a portion of Ms. Myers's property damage.  Thereafter, without the consent of Ms. Myers, Defendant AAA asserted a "subrogation claim" to Defendant Safeco, the insurance company for the tortfeasor.

49.     On information and belief, the "subrogation claim" made by Defendant AAA and paid by Defendant Safeco, was facilitated by and through Defendant Arbitration Forums.

50.     Defendant Safeco paid the "subrogation claim" of Defendant AAA, again without the consent of Ms. Myers.

**F.  Relationship Between Plaintiff Victoria Martin, Defendant AAA, and Defendant State Farm Mutual**

51.     In April 2017, Plaintiff Victoria Martin was involved in an automobile collision wherein her vehicle sustained property damage and Ms. Martin sustained personal injuries.

52.     At the time of the collision, Ms. Martin was insured by a policy of insurance issued by Defendant AAA.

53.     Following payment of a portion of the property damage pursuant to its policy of insurance, Defendant AAA made a "subrogation claim" directed against Defendant State Farm Mutual, the insurance carrier for the third party tortfeasor.

54.     On information and belief, the "subrogation claim" made by Defendant AAA and paid by Defendant State Farm Mutual, was facilitated by and through Defendant Arbitration Forums.

55.     All of this was done without the knowledge of consent of Ms. Martin.

**G.  Relationship Between Plaintiffs Dr. Robert Thomure, DDS, Kathleen Thomure, and Defendant State Farm Mutual**

56.     On or about March 30, 2016, an automobile owned by Plaintiffs Dr. Robert Thomure and Kathleen Thomure was stolen and damaged as a result of the negligence of a third party tortfeasor.

57.     At the time of the theft, Plaintiffs' vehicle was insured by a policy of insurance issued by Defendant State Farm Mutual.

58.     After paying a portion of the Thomures' property damage pursuant to its policy, Defendant State Farm Mutual asserted a "subrogation claim" against the insurance company for the tortfeasor.  This occurred without the consent of the Plaintiffs.

59.     On information and belief, the "subrogation claim" made by Defendant State Farm Mutual and paid by the third party tortfeasor's insurer, was facilitated by and through Defendant Arbitration Forums, Inc.

60.     As a result of Defendant State Farm Mutual's "subrogation claim," the Plaintiffs' payment by the insurance company for the tortfeasor was delayed by over six months.

**H. Relationship Between Defendant Insurance Companies and Defendant Arbitration Forums, Inc.**

61.     On information and belief, each of the Defendant Insurance Companies, State Farm Mutual, State Farm Fire, Acuity, Owners, Zurich, AAA, and Safeco, are members of Defendant Arbitration Forums, wherein, as a member, they present, defend and settle certain "subrogation claims" or present and defend "subrogation claims" for arbitration.

62.     Additionally, each of the named Defendant Insurance Companies, as a member of Defendant Arbitration Forums, provides employees to serve as arbitrators for Defendant Arbitration Forums, in arbitrations.

63.     All of the named Defendants' "subrogation claims" were submitted, defended, and/or paid in violation of Missouri law and without the consent of Plaintiffs.

**I. Overview of the Parties' Dispute**

64.     With the exception of Defendant Arbitration Forums, all of the named Defendants are insurance companies duly licensed and authorized to write liability and casualty insurance policies in the State of Missouri in accordance with the statutes, regulations, and law of the State of Missouri.

65.     With the exception of Defendant Arbitration Forums, all of the named Defendants issued policies of liability and casualty insurance either for the named Plaintiffs or to third party tortfeasors whose negligence caused damage to the named Plaintiffs' properties.

11

66.     With the exception of the Defendant Arbitration Forums, all of the named Defendants paid or asserted unlawful "subrogation claims" without the consent of their named insured.

67.     In Missouri, a subrogation interest is equitable in nature and exists only as and between an insurance company and its named insured.

68.     In Missouri, a property casualty insurer has no legal right to make a direct claim against an alleged tortfeasor or the alleged tortfeasor's liability insurer for reimbursement of payments it made to its insured. *Hagar v. Wright Tire & Appliance, Inc.,* 33 S.W.3d 605, 610 (Mo. Ct. App. 2000).

69.     In Missouri, a subrogation claim does not accrue unless, and until, an insured recovers monies from or on behalf of the third party tortfeasor responsible for the insured's property loss. *Hagar,* 33 S.W.3d at 610.

70.     In Missouri, an insured is not obligated to reimburse its property casualty insurer for payments that an insurance company made to the insured under the insured's property and casualty insurance policy for an insured loss unless the amount received from or on behalf of a third party tortfeasor exceeds the value of the insured's "uninsured loss."

71.     In Missouri, an insurance company asserting a subrogation claim against its insured must reduce that claim by its pro-rata share of the litigation expenses and attorney's fees incurred by the insured in the process of recovering funds from the third party tortfeasor responsible for the insured's loss. *Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. 2002)(En banc).

72.     Defendant Arbitration Forums, is a not-for-profit corporate entity whose members include property casualty insurance companies and, as such, is in the business of arbitrating and mediating illegal "subrogation claims" in the State of Missouri.  Those members include, but are

not limited to, the Defendants Insurance Companies named herein.  Arbitrations and mediations are conducted without the consent of the named insureds of the member casualty insurance companies.

73.     All of the named Defendant property casualty insurance companies, after paying a portion of the property damage claims to their named insureds, including the named Plaintiffs, and without the consent of those insureds, presented illegal "subrogation claims," through Defendant Arbitration Forums, to other liability insurance companies covering liability claims for the third party tortfeasors responsible in negligence for the property damage loss suffered by Plaintiffs.

74.     As a result of the aforementioned acts, each of the named Plaintiffs suffered a monetary loss when the Defendant insurance companies unlawfully and illegally retained Plaintiffs' deductibles after receiving full payment from their unlawful "subrogation claims" to the third party tortfeasors' insurance companies, and Plaintiffs will in the future continue to suffer monetary loss.

**J.  Defendant AAA's Missouri Market Shares of Total Property and Casualty Insurance**

75.     In 2014, Defendant AAA had 1.62% of the market share for property and casualty insurance, with the Missouri Department of Insurance ranking it 8 out of 717 insurers.  In comparison, in 2014, Defendant State Farm Mutual had 7.41% of the market share and was ranked 2 out of 717 property and casualty insurers.[2]

76.     In 2015, Defendant AAA had 1.44% of the market share for property and casualty insurance, with the Missouri Department of Insurance ranking it 10 out of 707 insurers.  In

---

[2] Missouri Department of Insurance, 2014 Missouri Market Share by Company: Total Property and Casualty Insurance,
https://insurance.mo.gov/reports/mktshr/index.php?formPost=1&line=1&name=&sortby=wpCurr+desc&typeoflist=I&year=2014&B1=Submit

comparison, in 2015, Defendant State Farm Mutual had 7.58% of the market share and was

ranked 2 out of 707 property and casualty insurers.[3]

77.     In 2016, Defendant AAA had 1.38% of the market share for property and casualty

insurance, with the Missouri Department of Insurance ranking it 12 out of 708 insurers.  In

comparison, in 2016, Defendant State Farm Mutual had 7.90% of the market share and was

ranked 2 out of 708 property and casualty insurers.[4]

## ALLEGATIONS COMMON TO THE CLASS

78.     This action is brought pursuant to Federal Rule of Civil Procedure 23 on behalf of

the Plaintiffs and all similarly situated individuals consisting of:

>    a.   such Missouri citizens having a policy of insurance issued in the State of
>         Missouri by the named Defendants, that suffered property damage in the State
>         of Missouri caused by a third party tortfeasor to which the Defendants
>         received money on a "subrogation claim" and in which Plaintiff was harmed
>         by Defendants' "subrogation claim"; such as Plaintiff was not fully
>         compensated by either failing to receive their deductible; or by Defendants
>         failing to share their portion of the litigation expenses Plaintiffs expended to
>         recover against the third party tortfeasors.

79.     The class is so numerous that joinder of all members of the class is impracticable

as the number of putative class members are counted in the thousands.

---

[3] Missouri Department of Insurance, 2015 Missouri Market Share by Company: Total Property and Casualty Insurance,
https://insurance.mo.gov/reports/mktshr/index.php?formPost=1&line=1&name=&sortby=wpCurr+desc&typeoflist=
I&year=2015&B1=Submit
[4] Missouri Department of Insurance, 2016 Missouri Market Share by Company: Total Property and Casualty Insurance,
https://insurance.mo.gov/reports/mktshr/index.php?formPost=1&line=9&name=&sortby=wpCurr+desc&typeoflist=
I&year=2016&B1=Submit

80.     Plaintiffs reserve the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses or to limit particular issues as discovery and orders of this Court warrant.

81.     There are questions of law and fact common to the class, as each putative class member seeks an order from this court declaring that the Defendants' "subrogation claims" made directly to third party tortfeasors or their insurers are unlawful and illegal in the State of Missouri.

82.     The claims of representative Plaintiffs are typical of the claims of the class as each of their property casualty insurance companies have submitted or paid unlawful and illegal "subrogation claims" directed to third party tortfeasors or their insurers.

83.     Plaintiffs will fairly and adequately represent and protect the interests of the putative class.  Plaintiffs retained competent and experienced counsel in the prosecution of this type of litigation.

84.     The prosecution of separate actions by or against individual members of the class would create the risk of incompatible standards of conduct for members of the class and the Defendants.

85.     The prosecution of separate actions by or against individual members of the class would create the risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interest of other members not parties to the adjudications, or substantially impair and impede their ability to protect their interest.

86.     The class action mechanism created by Federal Rule of Civil Procedure 23, is a superior and more efficient method of addressing the issues contained herein promoting judicial economy as the named Plaintiffs and the putative class members cannot afford to litigate against

Defendants individually, thereby making this class action the preferable method of disposing of said claims together, as opposed to piecemeal litigation.

87.     All the named Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final declaratory judgment relief and/or final injunctive relief appropriate in this matter.

88.     The questions of law and fact common to the class predominate over any questions affecting only individual members and, therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the only core issue for this court to determine is whether the Defendants acted unlawfully and illegally in presenting "subrogation claims" to third party tortfeasors or their insurers.[5]

## COUNT I: DECLARATORY JUDGMENT

COMES NOW Plaintiffs, on their behalf and on behalf of all others similarly situated, and seek a declaratory judgment from this Court, and as a basis for said request, Plaintiffs state:

89.     Plaintiffs incorporate by reference herein paragraphs 1 through 88 of this First Amended Complaint.

90.     An actual and genuine justifiable controversy exists, between Defendants on the one hand and Plaintiffs and others similarly situated on the other, concerning Defendants' collection and/or payments of any monies arising from a direct "subrogation claim" against an alleged third party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendants has resulted, or imminently will result, in depriving Plaintiffs and others similarly situated of their deductibles, legal expenses and costs incurred in recovering funds from third party tortfeasors, and their ability to present claims for damages.

---

[5] Plaintiff is repleading without waiving the right to seek remand.

91.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiffs request declaratory judgment concerning the following:

a.   Defendants' collection and/or payment of any monies arising from a "subrogation claim" against an alleged third party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendants is unlawful and illegal.

b.   Defendants failure to reduce its "subrogation claim" against its insured by a pro-rata share of the insured's attorney's fees and expenses incurred in securing payment from a third party tortfeasor is unlawful.

c.   Defendants' presentation of a subrogation claim against its insured when the insured has not been fully compensated for its "uninsured loss" is unlawful.

92.     As Defendants are authorized and exist in accordance with Missouri law, Defendants knew or should of known that their actions were illegal and unlawful.

93.     As such, an actual and genuine controversy exists between the Parties, and this Court is vested with the power to declare the rights and liabilities of the Parties with regard to Defendants' actions and/or Missouri laws.

94.     Because Defendants' actions have interfered with Plaintiffs' ability to present claims for damages to third party tortfeasors, there exists no alternative remedy for Plaintiff and others similarly situated to redress their injuries and/or rights.

WHEREFORE, for Count I of their First Amended Complaint, Plaintiffs pray for an Order of this Court on their behalf, and on behalf of all others similarly situated, declaring that the actions of the aforementioned Defendants are unlawful and illegal, and preventing each of the named Defendants from all similar unlawful acts in the future.

## COUNT II: INJUNCTIVE RELIEF

COMES NOW Plaintiffs, on their behalf and on behalf of all others similarly situated, and for Count II of this First Amended Complaint directed to each of the Defendants for injunctive relief, state as follows:

95.     Plaintiffs incorporate by reference herein paragraphs 1 through 94 of the First Amended Complaint.

96.     Assuming Plaintiffs succeed on the merits, Plaintiffs will be irreparably harmed if Defendant insurance companies are not enjoined from continuing this illegal practice of submitting "subrogation claims" without Plaintiffs' consent to the third party tortfeasor's insurer, receiving payment from that insurer, and then withholding Plaintiffs' deductibles.

97.     The balance of harms weighs in favor of Plaintiffs as Defendants' actions are illegal and no harm will occur to Defendants if stopped from making an unlawful "subrogation claim" without the consent of Plaintiff.  Plaintiffs, on the other hand, will be harmed as Defendant insurance companies will continue to make unlawful "subrogation claims" without Plaintiffs' consent, and Plaintiffs will continue not to be fully compensated due to Defendant Insurance Companies withholding their deductibles.

98.     The grant of a permanent injunction weighs in favor of the public interest.

WHEREFORE, for Count II of their First Amended Complaint, Plaintiffs pray for an Order of this Court on their behalf, and on behalf of all others similarly situated, preventing Defendants from engaging in its past and present unlawful "subrogation claim" practices.

## COUNT III: UNJUST ENRICHMENT

COMES NOW Plaintiffs, on their behalf and on behalf of all others similarly situated, and for Count III of this First Amended Complaint directed to each of the Defendants for unjust enrichment, state as follows:

99.     Plaintiffs incorporate by reference herein paragraphs 1 through 98 of the First Amended Complaint.

100.    Plaintiffs conferred a benefit upon Defendants when the Defendants retained Plaintiffs' deductibles even though the Defendants had received or paid the full amount of what would have properly been Plaintiffs' claims against a third party tortfeasor.

101.    Additionally, Plaintiffs conferred a benefit by paying their premiums and were denied the benefit of their right to seek relief from the third party tortfeasors.

102.    Defendants appreciated the benefit.

103.    Defendants accepted and retained the benefit under inequitable and unjust circumstances given Defendants' illegal and unlawful conduct.

104.    As a direct and proximate result of the aforementioned illegal and unlawful acts the named Defendants, the Defendants have become unjustly enriched in receiving funds that they were not legally entitled to receive.

WHEREFORE, for Count III of their First Amended Complaint, Plaintiffs pray for an Order of this Court on their behalf, and on behalf of all others similarly situated, requiring Defendants to disgorge themselves of all unlawfully recovered funds.

## COUNT IV: MONEY HAD AND RECEIVED

COMES NOW Plaintiffs, on their behalf and on behalf of all others similarly situated, and for Count IV of this First Amended Complaint, claim a right to money had and received by Defendants, and as a basis for said request, Plaintiffs state as follows:

105.   Plaintiffs incorporate by reference herein paragraphs 1 through 104 of the First Amended Complaint.

106.   Plaintiffs paid premiums, pursuant to their respective insurance contracts, to the Defendant Insurance Companies, to insure them for their covered property losses.

107.   Plaintiffs suffered property damage and made claims to their respective Defendant insurance companies as claims for their property losses.

108.   Defendant Insurance Companies paid Plaintiffs some portion of their losses for their property damage, but did not fully compensate Plaintiffs.

109.   Defendant Insurance Companies paid Plaintiffs some portion of their losses for their property damage, and withheld the amount of each Plaintiffs' deductible.

110.   Defendant Insurance Companies made unlawful "subrogation claims," through Defendant Arbitration Forums, against third-party tortfeasors' insurance companies concerning the Plaintiffs' property loss.

111.   The third-party tortfeasors' insurance companies, through Defendant Arbitration Forums, paid the Defendant Insurance Companies in satisfaction of the Defendant insurance companies' unlawful "subrogation claims."

112.   This was done without the consent of the Plaintiffs.

113.   Plaintiffs were not fully compensated by the Defendant insurance companies for their property losses.

114.    Defendant Insurance Companies did not reimburse Plaintiffs for the deductibles that were withheld by Defendant Insurance Companies, even once the Defendant insurance companies had received money from their unlawful "subrogation claims," thus receiving and retaining possession of the Plaintiffs' money.

115.    As a result, Defendant insurance companies appreciated the benefit as they have in their possession money that rightfully belongs to Plaintiffs and which, in equity and good conscience, should be paid over to Plaintiffs.

116.    The Defendant Insurance Companies' acceptance and retention of the Plaintiffs' deductibles was unjust.

WHEREFORE, for Count IV of their First Amended Complaint, Plaintiffs pray for injunctive relief on their behalf, and on behalf of others similarly situated, against the Defendants.

## COUNT V: COMPENSATORY DAMAGES

COMES NOW Plaintiffs, on their behalf and on behalf of all others similarly situated, and for Count V of this First Amended Complaint, claim compensatory damages from each of the named Defendants, and as a basis for said request, Plaintiffs state as follows:

117.    Plaintiffs incorporate by reference herein paragraphs 1 through 116 of the First Amended Complaint.

118.    As a direct and proximate result of the unlawful and illegal actions of each of the named Defendants, Plaintiffs have been damaged in the following respects, to-wit:

a.    Plaintiffs have failed to receive the full amount of their "deductible" as that term is used and defined in the insurance policies issued by the named Defendants to the named Plaintiffs, and all others similarly situated;

    b.   Plaintiffs have failed to receive funds for any legal expenses or costs incurred in recovering funds from third party tortfeasors;

    c.   Defendants have interfered with the Plaintiffs' ability to present claims for damages.

WHEREFORE, for Count V of their First Amended Complaint, Plaintiffs pray for compensatory damages on their behalf, and on behalf of all others similarly situated, against the Defendants, together with Plaintiffs' costs herein expended.

## COUNT VI: PUNITIVE DAMAGES

COMES Now Plaintiffs, and for Count VI of this First Amended Complaint, on their behalf and on behalf of all others similarly situated, state as follows:

119.    Plaintiffs incorporate by reference herein paragraphs 1 through 118 of the First Amended Complaint.

120.    Defendants' illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done in conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for Count VI of their First Amended Complaint, Plaintiffs pray for exemplary damages on their behalf, and on behalf of all others similarly situated, against the Defendants, together with Plaintiffs' costs herein expended.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: February 16, 2018                          Respectfully submitted,

                                                  */s/ Anthony G. Simon*
                                                  John G. Simon, #35231
                                                  Anthony G. Simon, #38745
                                                  Benjamin R. Askew, #58933
                                                  Anthony R. Friedman, #65531
                                                  THE SIMON LAW FIRM, P.C.
                                                  800 Market Street, Suite 1700
                                                  St. Louis, Missouri  63101
                                                  (314) 241-2929
                                                  Fax:  (314) 241-2929
                                                  jsimon@simonlawpc.com
                                                  asimon@simonlawpc.com
                                                  baskew@simonlawpc.com
                                                  afriedman@simonlawpc.com

                                                  Michael D. Stokes
                                                  Gonzalo A. Fernandez
                                                  DEVEREAUX, STOKES, NOLAN,
                                                  FERNANDEZ & LEONARD
                                                  133 S. 11th Street, Suite 350
                                                  St. Louis, Missouri  63102
                                                  (314) 621-3743
                                                  Fax:  (314) 621-5705
                                                  lori@stltriallawyers.com
                                                  gonz@stltriallawyers.com

                                                  *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all parties of record on February 16, 2018 via the Court's CM/ECF system.

                                                  */s/ Anthony G. Simon*