| | | |
|---|---|---|
| WHITE KNIGHT DINER, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-02406 JAR |
| | ) | |
| OWNERS INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Owners Insurance Company, Inc. ("Owners")'s Motion to Dismiss Plaintiffs' Third Amended Complaint. (Doc. No. 221). The motion is fully briefed and ready for disposition.

### I.      Background[1]

On or about March 15, 2015, a building owned by Plaintiffs Karen Freiner and Larry Lee Hinds and occupied by Plaintiff White Knight Diner, LLC was damaged when two vehicles collided at the intersection of 18th Street and Olive Street in the City of St. Louis. At the time of the collision, Plaintiffs were insured by Owners for property damage and loss of business income. The damage resulting from the March 2015 collision caused the restaurant operated by White Knight to close while repairs were made to the building. White Knight filed a claim with Owners for property damage and loss of business income. Owners paid $66,336.27 on the claim – $49,965.10 for property damage ($50,965.10 less $1,000 deductible) and $16,371.17 for lost business income. Thereafter, Owners made a "subrogation claim" to State Farm Mutual, the

---

[1] The background facts are taken from Plaintiffs' Third Amended Complaint and assumed true for purposes of this motion.

insurer of one of the tortfeasors, without Plaintiffs' knowledge or consent. Owners and State Farm Mutual arbitrated the "subrogation claim" and State Farm Mutual paid Owners $33,668.14.

On November 11, 2015, White Knight filed suit in St. Louis City Circuit Court against the two tortfeasor-drivers, Ambar Arango and Dzemal Omervic, i.e., <u>White Knight Diner, LLC v. Ambar Arango, et al.</u>, Case No. 1522-CC11066, seeking damages for lost income and property damage caused by the March 2015 collision.[2] Owners intervened in the action to "protect its subrogation interest in any recovery obtained by White Knight."[3] Thereafter, Arango sought to plead as an affirmative defense her entitlement to a setoff or credit for amounts paid to Owners by her insurer State Farm Mutual, which Owners opposed. The state court ruled that Arango could plead a setoff against any sums found to be due from her to Owners, but could not assert a setoff against White Knight for sums paid by State Farm to Owners or for sums paid by Owners under its policy. The state court also ruled that any amount Owners might be entitled to recover was subject to reduction by the amount collected from State Farm pursuant to its "subrogation claim." State Farm Mutual then intervened to recover the $33,668.16 it had paid to Owners on its "subrogation claim" based on Owners' representation that it "possessed the right to recover the property damage and business income loss allegedly sustained by White Knight from the alleged

---

[2] The Court has taken judicial notice of the Missouri state court file. <u>See</u> <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007) (district court may take judicial notice of public state records).

[3] The policy at issue contained a subrogation clause that stated as follows:

> **I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**
>
> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing … This will not restrict your insurance.

(Doc. No. 203-1).

tortfeasors, Defendants Arango and Omervic." The state court action ultimately settled. Owners never shared in the litigation expenses and attorneys' fees incurred by Plaintiffs.

Plaintiffs filed their Third Amended Complaint against Owners on behalf of themselves and others similarly situated on June 18, 2019,[4] alleging claims for declaratory judgment (Count I); injunctive relief (Count II); unjust enrichment (Count III); breach of implied covenant of good faith and fair dealing (Count IV); unauthorized practice of law (Count V); money had and received (Count VI); breach of contract (Count VII); compensatory damages (Count VIII); and punitive damages (Count IX). (Third Amended Complaint ("TAC"), Doc. No. 208). As the basis of their claims, Plaintiffs allege that after compensating them for their property loss, Owners made an illegal "subrogation claim" against State Farm Mutual, the tortfeasors' insurance company; and that as a result, Plaintiffs did not receive the full value of their deductible, were not reimbursed for litigation costs, and were impeded from fully recovering in their state court action against the tortfeasors. Owners filed an answer to Counts I and II and a Counterclaim against Plaintiffs for declaratory judgment. Owners moves to dismiss Counts III through IX for failure to state a claim or otherwise plead facts establishing causation.

## II. Legal standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) ). A claim for relief "must include sufficient factual information to provide the 'grounds'

---

[4] The procedural history of this case is set out in detail in the Court's March 25, 2019 Order of Dismissal (Doc. No. 186) and will not be repeated here.

on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When considering a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In addition, all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001).

**III.    Discussion**

In support of its motion, Owners argues that Plaintiffs' claims lack merit for three reasons. First, relying on Hagar v. Wright Tire & Appliance, Inc., 33 S.W.3d 605 (Mo. Ct. App. 2001), Owners argues that because payment by one insurer to another does nothing to diminish or impair the claim or amounts recoverable by an insured against the tortfeasor who harmed him, Plaintiffs cannot establish causation between Owners' actions and any harm suffered by Plaintiffs. (Doc. No. 222 at 2, 8-9). Second, the state court's ruling in Plaintiffs' favor in Arango estops them, both collaterally and judicially, from asserting that the payment to Owners negatively affected their claim against the tortfeasors. (Id. at 2, 9-11). Third, each of Plaintiffs' individual claims in Counts III through IX fail to state claims for relief. (Id. at 2, 12-20).

## A. Causation

Owners contends that <u>Hagar</u> is fatal to Plaintiffs' claims. There, the court ruled that neither a tortfeasor nor its insurer would ever be entitled to a credit against a judgment for amounts paid by the tortfeasor's insurer to the plaintiff's insurer. 33 S.W.3d at 611-12. Thus, the argument goes, nothing Owners did could have impeded Plaintiffs' full recovery from the tortfeasors. Plaintiffs respond that Owners has overstated the holding in <u>Hagar</u>, which does not address the economic reality of Missouri's insurance industry "scheme" whereby insurers, through "arbitration agreements," ensure they are made whole first, before their insureds even attempt to recover additional or uninsured losses. (Doc. No. 226 at 3). Plaintiffs assert that every "illegal subrogation claim" harms policyholders by, among other things, impeding their recovery in the underlying litigation. (<u>Id</u>.).

In <u>Hagar</u>, the plaintiffs suffered personal injuries and property damage when a gas stove purchased from Wright Tire caught fire. Plaintiffs recovered a portion of their property damage from their insurer, Shelter Insurance, and then sued Wright Tire for their personal injuries and property damages. 33 S.W.3d at 606. Shelter provided no assistance to the plaintiffs in their suit against Wright Tire. Instead, Shelter asked Wright Tire's insurer, Continental, to reimburse it for the money it had paid the plaintiffs on their property damage claim. Shelter and Continental had an arbitration agreement requiring the arbitration of this and other "intra-insurance" claims, that is, claims between insurance companies. <u>Id</u>. at 608. Shelter did not invite the plaintiffs to participate in this arbitration, and proceeded to arbitration with Continental without waiting for the plaintiffs' lawsuit to be resolved. <u>Id</u>. In exchange for a payment from Continental, Shelter released its claim against Wright Tire and Continental for any damages it sustained as a result of the plaintiffs' loss. <u>Id</u>. at 609. Once the suit was finally resolved in favor of the plaintiffs, Wright

Tire requested a credit on the judgment for the amount Continental had already paid Shelter, but the trial court refused to allow it. Id. at 607. Wright Tire appealed, arguing it was entitled to a credit because it had satisfied Shelter's subrogation interest in the judgment. The appellate court affirmed the trial court's denial of a credit:

> Shelter held only a subrogation interest, and that interest only entitled it to reimbursement of amounts it paid the [plaintiffs] out of any judgment the [plaintiffs] obtained from Wright Tire. Shelter was never entitled to a credit on the judgment, and it never held legal title to any part of the [plaintiffs'] property damage claim. ***Shelter therefore had no right to try to settle that claim with Wright Tire's insurer behind the backs of the [plaintiffs], and without their consent, as occurred here.*** The fact that Shelter did so could not give Wright Tire's insurer any rights against the [plaintiffs]. The burdens caused by Wright Tire's insurer's decision to settle a claim brought by Shelter which Shelter had no right to bring should remain on that insurer. Those burdens should not be shifted to the [plaintiffs], who were specifically and purposely excluded from those settlement negotiations.

Id. (emphasis added.)

The Court finds that Hagar's relevancy to the instant case lies in the court's ruling that a property insurer has no right to make a direct claim against either the alleged tortfeasor or its liability insurer for reimbursement of monies paid to its insureds, which is exactly what Owners did here. Plaintiffs argue that by making a "direct claim" against State Farm for reimbursement of monies it paid to Plaintiffs, Owners violated the rule in Hagar against "illegal subrogation claims" and thereby directly caused or contributed to cause their injuries, including a diminished recovery in state court and loss of their full deductible. (Doc. No. 226 at 9).

When ruling on a motion to dismiss, the court looks to whether the plaintiff's allegations suffice to show the required causal connection between the defendant's wrongful conduct and the plaintiff's loss. See Miller v. Redwood Toxicology Laboratory, Inc., 688 F.3d 928, 935 (8th Cir. 2012). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to present evidence in support of his claim. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th

Cir. 1995). For purposes of the instant motion, the Court finds that Plaintiffs have sufficiently alleged a causal connection between Owners' actions and their damages. Thus, dismissal is not warranted on these grounds.

## B. Estoppel

Next, Owners argues that the state court's ruling in Plaintiffs' favor in Arango bars them under the doctrines of collateral estoppel and judicial estoppel from asserting the contrary proposition – that payment to Owners negatively affected their claim against the tortfeasors. Plaintiffs respond that the issue in the instant action, i.e., the legality of Owners' "subrogation claim" and the resulting harm to Plaintiffs, is materially different from the issue decided in the underlying litigation, i.e., whether Arango was entitled to a set-off. The Court agrees.

Under Missouri law, a claim is barred under collateral estoppel only where the following four elements are satisfied: "(1) the issue decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or is in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit." Droste v. Julien, 421 F. Supp. 2d 1188, 1193 (E.D. Mo. 2006) (quoting Bowers v. Hiland Dairy Co., 188 S.W.3d 79, 86 (Mo. Ct. App. 2006)).

In Arango, the issue adjudicated by the state court pertained solely to whether Arango could pursue the affirmative defense of setoff. (Doc. No. 222-6 at 4) ("[C]an a defendant tortfeasor claim setoff … when its liability insurer pays some or all of the tort claimant's damages?"). The court found that absent an assignment of rights by State Farm, Arango had no right of setoff or recovery against Plaintiff White Knight for sums paid by Aranago's insurer,

State Farm, to Owners. (Id.). Here, Plaintiffs' claims arise from Owners' assertion of a "subrogation claim" against State Farm and the resulting harm to Plaintiffs. Because the first element of collateral estoppel is not satisfied, dismissal is not warranted on collateral estoppel grounds.

The purpose of judicial estoppel is to protect the integrity of the judicial process by preventing parties from playing "fast and loose with the courts to suit the exigencies of self-interest." Rush v. Norfolk S. Ry. Co., No. 4:08-CV-706 CAS, 2008 WL 5101001, at \*3 (E.D. Mo. Nov. 26, 2008) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999)). Therefore, a party who takes a certain position in a legal proceeding, "and succeeds in maintaining that position," is prohibited from thereafter assuming a contrary position "simply because his interests have changed," especially if doing so prejudices the party "who acquiesced in the position formerly taken by him." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)); see also El-Scari v. Comprehensive Mental Health Servs., No. 4:19-00179-CV-RK, 2019 WL 5386489, at \*2 (W.D. Mo. Oct. 21, 2019).

Owners argues that in the underlying litigation, Plaintiffs took the position that their claims could not be reduced by the payment State Farm made to their insurer, Owners, and prevailed on that position when the state court struck Arango's defense of set-off. According to Owners, Plaintiffs are now arguing the contrary position, i.e., that their claims against the Arango defendants were reduced by the payment made to Owners.

Under Missouri law, whether a party's positions are "clearly inconsistent," is "the threshold essential to a judicial estoppel defense." Kirk v. Schaeffler Grp. USA, Inc., 887 F.3d 376, 385 (8th Cir. 2018) (quoting Imler v. First Bank of Mo., 451 S.W.3d 282, 292 (Mo. Ct. App. 2014)). If a party's positions can be reconciled, there is no need to protect the integrity of

the judicial process from inconsistent positions. Thus, Missouri courts routinely reject invitations to apply judicial estoppel upon determining that two positions are not clearly inconsistent. Id. (citations omitted).

Plaintiffs did not take "clearly inconsistent" positions in the underlying tort action and this action. In Arango, White Knight argued that Arango was not entitled to a set-off for money State Farm paid to Owners. Plaintiffs take the same position here. As Hagar makes clear, no insurance company or insured is entitled to a set-off or credit for the amount of the insurer's "subrogation" interest. Plaintiffs allege they have been harmed as a result of Owners settling a "subrogation" claim that did not belong to it. Travelers Prop. Cas. Ins. Co. of America v. Nat'l Union Ins. Co. of Pittsburg, Pa., 621 F.3d 697, 710 (8th Cir. 2010) (The general law in Missouri is that "the insured maintains legal title to the right to sue third parties and sole authority to maintain such suits, and the insurer holds only the right to later assert a claim against proceeds recovered."); Keisker v. Farmer, 90 S.W.3d 71, 74 (Mo. 2002) ("The exclusive right to pursue the tortfeasor remains with the insured, which holds the proceeds for the insurer."). Thus, the positions Plaintiffs have taken are consistent with each other – Owners' "subrogation" claim was without merit *and* there can be no set-off. Dismissal is therefore not warranted on judicial estoppel grounds.

### C. Pleading standards

Lastly, Owners argues that Plaintiffs fail to meet the pleading standards necessary to survive a motion to dismiss.

**Unjust enrichment (Count III) / Money had and received (Count VI)**

To state a claim for unjust enrichment, the petition must set forth facts demonstrating: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the

expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit." Hill v. Bank of Am., N.A., No. 4:16CV00444-ERW, 2016 WL 6441599, at *6 (E.D. Mo. Nov. 1, 2016) (internal citation and quotation marks omitted). Similarly, to state a claim for money had and received, a plaintiff must allege that "'(1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust." Id.

In Counts III and VI, Plaintiffs allege that they conferred a benefit upon Owners in the form of "an equitable subrogation right," which Owners exercised at Plaintiffs' expense; that the money paid to Owners by State Farm in satisfaction of Owners' "unlawful subrogation claims" "rightfully belonged to Plaintiffs"; and that Owners was unjustly enriched by accepting and retaining those monies. (See TAC at ¶¶ 102-103, 128, 132). Owners argues that Plaintiffs cannot establish an essential element of these claims, i.e., a benefit conferred upon the defendant by the plaintiff, because it was State Farm, not Plaintiffs, who actually paid Owners. (Doc. No. 222 at 12). In addition, Owners argues that Plaintiffs' claims fail because they have an adequate remedy at law in the form of a breach of contract claim pursuant to their insurance policy. (Doc. No. 222 at 14; Doc. No. 227 at 9).

Under Missouri law, a party may not recover on an implied, or quasi-contract theory when a valid, express contract governs the subject matter of the parties' dispute. See Al–Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co., 571 F.3d 754, 759 (8th Cir. 2009); Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). Although Missouri law prevents simultaneous recovery under both express contract and quasi-contract claims, it "does not preclude that plaintiff from pleading both theories in her complaint." Owen v. Gen. Motors Corp., No. 06–4067, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006). Indeed, the Federal

Rules of Civil Procedure permit a party to plead alternative theories of relief even if the theories are inconsistent. Fed. R. Civ. P. 8(a)(3); id. 8(d)(2), (3). In reliance upon Rule 8, federal courts in Missouri have consistently denied motions to dismiss quasi-contract claims even where the pleading also alleges the existence of an express contract. See, e.g., Level 3 Comm'cns, LLC v. Ill. Bell Tel. Co., Civ. No. 13–1080, 2014 WL 414908, at *6 (E.D. Mo. Feb. 4, 2014) (allowing claims for unjust enrichment and breach of contract to go forward at motion to dismiss stage). Although Plaintiffs have not expressly pled their claims for unjust enrichment and money had and received as alternative claims, the Court will construe them as such.

With respect to Owners' argument that Plaintiffs have failed to establish that they conferred a benefit upon Owners, the Court finds the amended complaint, when read as a whole, provides sufficient facts to plausibly state a claim for unjust enrichment and money had and received. Owners' arguments in support of its motion to dismiss challenge the factual allegations of the complaint and are premature at this stage of the litigation. Thus, Owners' motion to dismiss Counts III and VI is denied.

**Breach of the implied covenant of good faith and fair dealing (Count IV)**

In Count IV, Plaintiffs allege it was implicit in its insurance policy with Owners that Owners had no right to prosecute claims directly on their behalf or to arbitrate or settle claims without their consent and that Owners would not take any action that would undermine Plaintiffs' rights to recover from third parties for their losses. (TAC at ¶¶ 109-110). Plaintiffs further allege that Owners acted in bad faith by asserting "subrogation claims" against third party insurance companies without Plaintiffs' knowledge or consent, and by receiving money from those third party insurance companies in purported satisfaction of said "subrogation claims," in violation of the covenant of good faith and fair dealing under its insurance policy. (Id. at ¶ 112).

Plaintiffs further allege that Owners acted in bad faith by representing that it was acting on behalf of Plaintiffs and had Plaintiffs' authorization and consent to submit said "subrogation claims" when in fact Plaintiffs had no knowledge of Owners' activities. (Id. at ¶ 113). Owners argues that Plaintiffs fail to state a claim because they have not alleged any facts showing it failed to comply with any term of the insurance policy.

"Missouri law implies a covenant of good faith and fair dealing in every contract." Berringer v. JPMorgan Chase Bank, N.A., 16 F. Supp. 3d 1044, 1048 (E.D. Mo. 2014) (quoting Farmers' Elec. Coop., Inc. v. Mo. Dep't Corr., 977 S.W.2d 266, 271 (Mo. 1998)). However, the tort of breach of the covenant of good faith and fair dealing arises from a violation of the duty to act in good faith imposed by the common law, not by the terms of the contract. See U.S. v. Basin Elec. Power Co-op, 248 F.3d 781, 798 (8th Cir. 2001) (quoting Continental Bank N.A. v. Everett, 964 F.2d 701, 705 (7th Cir. 1992) ("Since good faith is merely a way of effectuating the parties' intent in unforeseen circumstances, the implied covenant has 'nothing to do with the enforcement of terms actually negotiated.' ")).

To state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must plead facts showing that Owners acted in bad faith. Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1077 (8th Cir. 2013) (citing Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 412 (Mo. Ct. App. 2000)). As set out above, Plaintiffs have pled that Owners acted in bad faith by representing to State Farm that it was acting on behalf of Plaintiffs and had their authorization and consent to submit a "subrogation claim" when in fact Plaintiffs had no knowledge of Owners' activities; and then by receiving payment from State Farm in purported satisfaction of said "subrogation claim. This is sufficient factual content to withstand a motion to dismiss.

**Unauthorized practice of law (Count V)**

In Count V, Plaintiffs allege that Owners engaged in the unauthorized practice of law by "act[ing] in a representative capacity in connection with ongoing or prospective litigation involving the underlying … claims that belonged to Plaintiffs as between the driver(s) insured by the third party insurance company," specifically through the unauthorized "mediation, arbitration and/or negotiation" of Plaintiffs' claims with the third party insurer. (TAC at ¶¶ 119-121). Citing In re Allstate Ins. Co., 722 S.W.2d 947 (Mo. 1987), Owners argues that Missouri has carved out an exception from the literal application of its unauthorized practice statute, RS Mo. 484.020, for insurers and their interactions with insureds. (Doc No. 222 at 17). Plaintiffs have not addressed Owners' arguments in its response. Regardless, Plaintiffs' claim fails.

First, Plaintiffs provide no authority in support of their position that Owners, by asserting a "subrogation claim" against a third party insurance company, engaged in the "practice of law" or the "law business" as those terms are defined by Missouri statute. Moreover, as Owners aptly notes, the Missouri Supreme Court has applied a "functional" analysis in unauthorized practice cases to avoid the literal proscriptions of the statute and create an exception for, *inter alia*, insurance company employees who represent insureds. State of Missouri, 2006 WL 6239952, at *2  (Missouri S. Ct. Adv. Com. Apr. 5, 2006) (citing Allstate, 722 S.W.2d at 947). In Allstate, the Missouri Supreme Court held that an insurance company which defends cases through its employees does not engage in the practice of law. 722 S.W.2d at 950. For these reasons, Owners' motion to dismiss Count V will be granted.

**Breach of contract (Count VII)**

In Count VII, Plaintiffs allege that pursuant to their insurance policy with Owners, Owners agreed to insure them for property damage in exchange for their premium payments.

(TAC at ¶ 137). The policy also provided Owners with subrogation rights against Plaintiffs "in the event that Owners paid claims to Plaintiffs suffering losses and Plaintiffs also recovered monies for such losses from a third party insurance company or third party defendant. (Id. at ¶ 138). Plaintiffs further allege that Owners breached its policy with them by "prematurely and unlawfully asserting 'subrogation claims' against a third party insurance company, without the knowledge or consent of Plaintiffs, for which [Owners] had no legal right to assert." (Id. at ¶ 139). Plaintiffs further allege that as a direct result of Owners' breach, they have been damaged by, *inter alia*, "(1) a lowering of the amount that Plaintiffs recovered from the tortfeasors or the tortfeasors' insurance companies by virtue of [their] unwillingness to pay more than once on the same claim; (2) Plaintiffs' inability to reduce [their] share of litigation expenses and attorneys' fees expended to recover from the tortfeasors when, in fact, … Owners was partially reimbursed by State Farm Mutual for claims made by Plaintiffs; (3) Plaintiffs' failure to fully or more fully receive compensation for covered losses at least to the extent of 'subrogation claims' monies that are being withheld from [them] by …Owners; and (4) Plaintiffs' continuing "uninsured losses." (Id. at ¶ 141).

Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Hill, 2016 WL 6441599, at *4 (citing Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010)). Owners argues that because Plaintiffs have failed to identify a specific policy provision that Owners is alleged to have breached, they fail to state a claim.

A breach of contract claim does not require this type of specificity at this early stage of the case. See, e.g., BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 689 (8th Cir. 2003) ("The allegations that BJC had a binding agreement with Columbia, that Columbia breached the agreement, and that BJC suffered injury as a result of the breach, are sufficient to satisfy the requirements of Rule 8(a)."). Plaintiffs have sufficiently pleaded a claim for breach of contract. Owners' motion is therefore denied on this basis. Hill, 2016 WL 6441599, at *5.

**Compensatory damages (Count VIII)**

In Count VIII, Plaintiffs assert a claim for compensatory damages. Owners argues that because Plaintiffs have not alleged a cause of action or specific theory of recovery in its count of compensatory damages, it must be dismissed. Plaintiffs have not responded to Owners' motion with respect to this claim. In any event, Plaintiffs have plead a claim for compensatory damages in Counts IV, VI, and VII of their amended complaint, and incorporated all counts into Count VIII through incorporation by reference. (TAC at ¶ 142). Therefore, in connection with Plaintiffs' other counts, Count VIII will not be dismissed.

**Punitive damages (Count IX)**

Plaintiffs, in Count IX, assert a claim for punitive damages, alleging that "Owners' illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiffs." (TAC at ¶ 145). Owners argues that Plaintiffs' count for punitive damages should be dismissed because Missouri does not recognize a standalone cause of action for punitive damages. In addition, Owners argues that punitive damages are not available for claims seeking recovery in quasi-contract or implied contract (Counts III and VI) or for claims sounding in breach of contract (Counts III and VI). Again, Plaintiffs have not responded to Owners' motion with respect to this claim.

It is true that a punitive damage claim is not a separate cause of action and that any claim for punitive damages must be brought in conjunction with a claim for actual damages. See Hill, 2016 WL 6441599, at *8 (citing Jackson v. Wiersema Charter Serv., Inc., No. 4:08CV00027 JCH, 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009)). However, here, Plaintiffs have asserted claims for actual damages in separate counts of their amended complaint and incorporated all counts into Count IX through incorporation by reference. (TAC at ¶ 144). Therefore, in connection with Plaintiffs' other counts, Count IX is not a standalone cause of action and will not be dismissed on this basis. Hill, 2016 WL 6441599, at *8.

Although punitive damages are generally not available for contract-based claims under Missouri law, there are exceptions to this general rule. Punitive damages may be awarded in a breach of contract action when the breaching party is also guilty of conduct that rises to the level of a tort separate and independent from the contractual claim. McNeil v. Best Buy Stores, LP, No. 4:13CV1742 JCH, 2014 WL 2442145, at *2 (E.D. Mo. May 30, 2014) (citations omitted); Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 896 n. 3 (8th Cir. 2005) (quoting Kelly v. Golden, 352 F.3d 344, 351 (8th Cir. 2003)).

The Court believes that Plaintiffs have alleged sufficient facts in support of their claim for punitive damages to survive a motion to dismiss. It is not the function of the Court to assess the merits of a particular claim; "the issue is not whether a [party] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Union Petrochem, Inc. v. Glore, 498 F. Supp. 14, 15–16 (W.D. Mo. 1980). Thus, although it may ultimately develop that Plaintiffs are not entitled to recover punitive damages, the Court believes it would be premature at this stage of the proceedings to rule that Plaintiffs cannot possibly

establish any facts which would meet the legal requirements necessary to sustain an award of punitive damages under Missouri law.

### IV.    Conclusion

Having considered the parties' arguments, especially in light of the standard for ruling on a motion to dismiss, the Court finds that the interests of justice and fairness do not require that Plaintiffs be precluded from pursuing their claims. Should the factual record develop to the point where a motion for summary judgment on the same theories are appropriate, the Court will consider it at that time.

Accordingly,

**IT IS HEREBY ORDERED** that Owners' Motion to Dismiss Third Amended Complaint [221] is **GRANTED** as to Plaintiffs' claim for unauthorized practice of law (Count V). Count V is **DISMISSED** without prejudice. In all other respects Owners' motion is **DENIED.**

**IT IS FURTHER ORDERED** that within twenty (20) days from the date of this Order, Owners shall file its answer to Counts III, IV, VI, VII, VIII and IX of Plaintiffs' Third Amended Complaint.

Dated this 25th day of March, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**