UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WHITE KNIGHT DINER, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-02406-MTS |
| | ) | |
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the parties' competing motions for summary judgment, Docs. [262] and [265]. Defendant has moved for summary judgement on all claims alleged against it. Plaintiffs have moved for partial summary judgment on their "claims for damages resulting from Owners' 'subrogation claims.'" Doc. [265]. For the reasons explained below, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion in full.

**I.     Background and Facts**

Plaintiffs Larry Lee Hinds and Karen Freiner own a building located at the intersection of Eighteenth and Olive in St. Louis in which Plaintiff White Knight Diner, LLC ("White Knight") operates. In March of 2015, two vehicles driven by individuals not involved in this suit collided with one another at the intersection of Eighteenth and Olive. The collision caused at least one of the vehicles to collide with the building, which caused the building damage. Besides the physical damage to the building, White Knight could not operate until necessary repairs were made. As such, they also lost business income.

White Knight had an insurance policy through Defendant Owners Insurance Company ("Owners") that covered such losses, so White Knight submitted a claim to Defendant for

property damage and loss of business income. Owners paid Plaintiffs a total of $66,336.27 for their property loss and business loss. That payment accounted for $49,965.10 in property damage loss ($50,965.10 less a $1000 deductible) along with $16,371.17 for business income loss. Plaintiffs accepted the payment; they neither contested nor disputed the amounts Owners paid them under the insurance contract. And they never brought suit against Defendant based on the amount paid under the insurance contract. In fact, Plaintiff Hinds referred to Defendant as the "no problem people," as related to its handling of Plaintiffs' claims. Doc. [269] ¶ 8.

After Plaintiffs received payment from Defendant, White Knight filed suit in Missouri state court seeking damages for lost income against both drivers involved in the collision at issue. Both drivers involved in the collision were insured, one by State Farm and the other by Progressive. While this litigation in state court between White Knight and the drivers was ongoing, Defendant, using the services of a separate company called Trover Solutions, Inc., submitted a "request for payment" to both State Farm and Progressive asking to recover the amount it paid to Plaintiffs, plus Plaintiffs' deductible.[1] *See, e.g.*, Doc. [271-12]. Progressive declined to pay Defendant. State Farm, though, paid $33,668.14 to Defendant via check dated December 8, 2015, an amount equaling one half the damages for which Defendant had paid Plaintiffs plus one half of Plaintiffs' deductible. Doc. [269] ¶ 14. State Farm did not require a release from anyone in exchange for its payment to Defendant, and neither Defendant nor Plaintiffs gave State Farm any release in exchange for the payment. *Id.* ¶ 15. After Defendant received the money from State Farm, Defendant returned $500 to Plaintiffs as a pro rata share of the deductible Plaintiffs paid. *Id.* ¶ 17.

---

[1] Notice also was sent to counsel that represented White Knight in the state court suit. *See* Doc. [271-13]; *see also* Doc. [269] ¶ 11 (Plaintiffs admitting "that Plaintiffs were aware Owners asserted a 'subrogation' claim.").

Meanwhile, White Knight's state claims against the State Farm insured driver and the Progressive insured driver continued. In the litigation, the driver insured by State Farm included a defense of set-off against White Knight for the amount that State Farm previously paid to Owners. Doc. [269] ¶ 19. White Knight moved to strike the set-off defense, and the state court struck it. *Id.* The State Farm insured driver filed a motion to reconsider, which White Knight opposed. *Id.* ¶¶ 20–21. White Knight argued that neither State Farm nor the insured driver were entitled to a set-off or credit pursuant to the holding of *Hagar v. Wright Tire & Appliance, Inc.*, 33 S.W.3d 605 (Mo. Ct. App. 2000) (Stith, J.). *Id.* ¶ 21. The state court agreed. *Id.* Circuit Judge Robert Dierker issued an order on March 7, 2017 finding that the driver insured by State Farm was *not* entitled to assert the defense of set-off against White Knight for the amount State Farm paid to Owners. *Id.* ¶ 22.

In April 2018, White Knight settled its state claims against the driver insured by Progressive for $25,000. *Id.* ¶ 27. Later, in September 2018, White Knight settled its claim against the driver insured by State Farm for $16,331.86. *Id.* ¶ 26. The $16,331.86 is what remained of the driver's $50,000 policy limit *if* you subtract the amount State Farm earlier provided to Owners. White Knight voluntarily accepted this settlement though it was successful in its argument that the State Farm insured driver was *not* entitled to assert the defense of set-off against White Knight for the amount State Farm paid to Owners.

Before those underlying state court cases even concluded, Plaintiffs brought this putative class action suit against Owners alleging that when Owners sought and received reimbursement from State Farm it was an "unlawful subrogation practice[]" that was "contrary to Missouri law." Doc. [208] ¶¶ 1–2. Plaintiffs allege they were damaged because Owners withheld Plaintiffs' deductibles and "fail[ed] to fully compensate [them]." *Id.* ¶ 14. Owners, Plaintiffs claim,

deprived them of their "ability to be made whole" through the "unlawful 'subrogation claims.'" *Id.* ¶ 15. Plaintiffs' Third Amended Complaint[2] lists nine counts, which are: (I) Declaratory Judgment; (II) Injunctive Relief; (III) Unjust Enrichment; (IV) Implied Covenant of Good Faith and Fair Dealing; (V) Unauthorized Practice of Law; (VI) Money Had and Received; (VII) Breach of Contract; (VIII) Compensatory Damages; and (IX) Punitive Damages. The Court previously dismissed Count V, unauthorized practice of law. Doc. [229]. Defendant now has moved for summary judgment on all remaining counts, noting though that only four of the eight remaining counts—Unjust Enrichment; Implied Covenant of Good Faith and Fair Dealing; Money Had and Received; and Breach of Contract—put forward a distinct theory of liability. Plaintiffs have moved for partial summary judgment. They ask the Court to find Owners' action was "contrary to Missouri law and unlawful." Doc. [266] at 1.

**II.      Standard**

The standards applicable to summary judgment motions are well settled, and they do not change when both parties have moved for summary judgment. *See Tower Rock Stone Co. v. Quarry & Allied Workers Loc. No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must

---

[2] Because it has little relevance to the instant Motions, the Court does not detail the twisting procedural journey this case has taken. For information on this case's procedural history, see Doc. [50] (available at 2017 WL 4682824) or Doc. [208] ¶¶ 23–34.

respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.

**III.    Discussion**

      *a.    Undisputed facts establish that Plaintiffs have standing to bring their claims.*

Because "[i]t is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit," the Court first addresses Defendant's arguments that Plaintiffs lack standing to peruse their claims. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Plaintiffs, as the party invoking the Court's jurisdiction, bear the burden of establishing they have a "personal stake" in the case sufficient to answer the question: "What's it to you?" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To answer that question in a way sufficient to establish standing, Plaintiffs must show: (i) that they "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury was likely caused by Defendant; and (iii) that judicial relief would likely redress the injury. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Drilling deeper, the Supreme Court has stated that an "injury in fact" is an "invasion of a legally protected interest" and must not only be "concrete and particularized" but also "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. For the causal connection between the injury and the conduct complained of, the injury must be fairly traceable to the defendant's challenged action and not the result of the independent action of some third party not before the court. *Id.* Finally, for the third aspect, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* These requirements "ensure[] that federal courts decide only 'the rights of individuals'" and do not "adjudicate hypothetical or abstract disputes." *Ramirez*, 141 S. Ct. at 2203 (quoting *Marbury v. Madison*, 5 U.S. 137, 170 (1803)).

Since these three elements of standing are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* In response to a motion to dismiss, for example, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Mineta*, 495 F.3d at 569 (quoting *Lujan*, 504 U.S. at 561). But when standing is challenged at the summary judgment stage, like it is here, "the plaintiff can no longer rest on such 'mere allegations,' but must "'set forth'" by affidavit or other evidence "'specific facts.'" *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)); *accord Browning v. Apex Physical Therapy*, No. 4:19-cv-02395-JAR, 2021 WL 1088100, at *3 (E.D. Mo. Mar. 22, 2021); *see also Const. Party of S.D. v. Nelson*, 639 F.3d 417, 421 (8th Cir. 2011) (finding district court erred when it took "facts from the complaint or from the parties subsequent submissions" since neither were sufficient to withstand a standing challenge at summary judgment).

The Court concludes that undisputed facts supported by the record show Plaintiffs have standing to bring their contract, quasi-contract, and contract-related claims. The Eighth Circuit has held that "a plaintiff who has 'produced facts indicating it was a party to a breached contract' has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (quoting *ABF Freight Sys., Inc. v. Int'l Brotherhood of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011)); *see also Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (concluding plaintiff had standing "regarding his breach of contract and contract-related claims" based on allegations that he did not receive the full benefit of his bargain). Plaintiffs have produced evidence, and it is not otherwise disputed, that Plaintiffs and Defendant had an insurance contract. There is no dispute that Defendant received $33,668.14 from State Farm relevant to the accident underlying the claim at issue. Nor does Defendant dispute that it has not returned Plaintiffs' full deductible. Likewise, Defendant does not dispute that it has not provided payment for any of Plaintiffs' legal fees incurred in their collection efforts. Plaintiffs allege Defendant's actions breached the insurance contract or an implied contract of the parties. If a defendant causes "monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Ramirez*, 141 S. Ct. at 2204.

Since the Court has concluded Plaintiffs have Article III standing to bring their claims, the Court will now address the merits of those claims since having standing in no way guarantees a meritorious claim. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."); *see also Longaker v. Bos. Sci. Corp.*, 715 F.3d 658, 664 (8th Cir. 2013) (Bye, J., dissenting) (explaining "standing turns on the

*injury*" alleged while whether plaintiff ultimately succeeds in obtaining relief "turns on the *cause of action*" brought).

  b.  *Defendant did not breach the contract.*

Plaintiffs' Third Amended Complaint contains a count alleging breach of contract, but nowhere in the complaint did Plaintiffs cite which provision in the contract Defendant breached. They alleged that "the contract[] provided that Defendant[] had subrogation rights as against Plaintiffs in the event that Defendant paid claims to Plaintiffs suffering losses and Plaintiffs also recovered monies for such losses from a third party insurance company or third party defendant." Doc. [208] ¶ 138. They further allege that "Defendant breached [its] contract[] with Plaintiffs by prematurely and unlawfully asserting 'subrogation claims' against a third party insurance company, without the knowledge or consent of Plaintiffs, for which Defendant had no legal right to assert." *Id.* ¶ 139. But again, they gave no specific provision breached.

That said, in their Response to Defendant's Motion for Summary Judgment, Plaintiffs refer to the policy's "subrogation provision." Doc. [268] at 12; *see also* Doc. [269] at 2; Doc. [264] ¶ 4. That provision states:

> If any person or organization to or from whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your right against another party in writing:
> 1. Prior to a loss to your Covered Property or Covered Income.
> 2. After a loss to your covered Property or Covered Income only if, at time of loss, that party is one of the following:
>    a. Someone insured by this insurance;
>    b. A business firm:
>       (1) Owned or controlled by you; or
>       (2) That owns or controls you; or
>    c. Your tenant
>
> This will not restrict your insurance.

The Supreme Court of Missouri has interpreted this exact language from another policy. *Keisker v. Farmer*, 90 S.W.3d 71, 73 (Mo. banc 2002). In *Keisker*, it concluded that the language was too "ambiguous" to create an assignment of a claim and instead leaves the insurance company "with a right of subrogation." *Id.* at 74–75. Under Missouri law, an injured party may collect on a claim from their own insurance *and* sue the tortfeasor. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Kansas City Power & Light*, 568 F. Supp. 2d 1040, 1061 (W.D. Mo. 2008). The injured party may do so because the "legal title to [a] cause of action remains in the insured" even after the insurance company pays the insured. *Hagar*, 33 S.W.3d at 610.

The insured is permitted to keep proceeds recovered from a tortfeasor to the extent those proceeds compensate uninsured losses. *Travelers Prop. Cas. Co. of Am.*, 568 F. Supp. 2d at 1061. But the insured is not entitled to profit at the insurance company's expense. *See Keisker*, 90 S.W.3d at 75 ("Subrogation exists to prevent unjust enrichment."); *cf. Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005) ("A party should be fully compensated for its loss, but not recover a windfall."). The insured "holds the proceeds for the insurer," who has the equitable right in the money it paid to the insured. *Keisker*, 90 S.W.3d at 74; *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 831 (Mo. banc 2014) (noting an insurer's right to equitable subrogation arises "when the insurer pays its insured's loss and allows the insured to recover from any third party who may have caused the loss").

The insurance contract here provided Defendant "with a right of subrogation." *See Keisker*, 90 S.W.3d at 75. In other words, Defendant *could* have pursued a claim to any money Plaintiffs recovered from the tortfeasors that exceeded Plaintiffs' uninsured losses, up to the amount Defendant had paid Plaintiffs, and would have been *entitled* to such funds. *See* RIGHT, *Black's Law Dictionary* (11th ed. 2019) ("An entitlement arising out of a legally enforceable

agreement, whether express, implied, or imposed by law or equity."). Defendant did not exercise its right, though. Instead, it did something else that is neither illegal nor violative of any policy provision provided to the Court. It simply asked for the money.

The policy provided Defendant with a "right of subrogation," but in no way does the language *prohibit* Defendant from acting as it did. According to the undisputed facts, Defendant, through a third-party company, simply requested that State Farm pay Defendant for half the amount Defendant paid to Plaintiffs. Doc. [271-12] ("Request for Payment" to State Farm on behalf of Defendant). Defendant made the same request to Progressive, the insurer of the other driver. Doc. [267-11]. Defendant, though, did *not* sue State Farm. Nor have Plaintiffs pointed the Court to anything in the record showing where Defendant suggested it would, or even could, sue State Farm. *See Hagar*, 33 S.W.3d at 611 (noting that "under Missouri law the sole *right to sue* [the tortfeasor] remained with the [insured]") (emphasis added); *Farmers Ins. Co. v. Effertz*, 795 S.W.2d 424, 426 (Mo. Ct. App. 1990) ("The exclusive *right to sue . . .* remain[ed] with the insured.") (emphasis added); *State Farm Mut. Auto. Ins. Co. v. Jessee*, 523 S.W.2d 832, 834 (Mo. Ct. App. 1975) (noting an insurer's "*right to maintain suit* against the tort-feasor depends upon whether it receives from the insured an assignment of the whole claim as compared with merely rights of subrogation"). Defendant, through Trover Solutions, asked each insurance company to voluntarily pay Defendant for a pro rata share of what their insureds caused and thereby cost Defendant. *See, e.g.*, Doc. [271-12]. Progressive declined Defendant's request, as it had every right to do. State Farm, on the other hand, "agreed" to pay Defendant and paid Defendant *without* obtaining a release from anyone. *See* Doc. [267-9]; Doc. [269] ¶ 15.

Under Missouri law, since Defendant was not entitled to payment by State Farm, the driver insured by State Farm was not entitled to set-off or lessen the amount of damages he

caused and for which he was liable with what State Farm had voluntarily paid Defendant. *Hagar*, 33 S.W.3d at 608.  This conclusion is not just an abstraction of Missouri law.  The state court in White Knight's case against the driver made that very conclusion and struck the set-off defense.  As such, the exclusive right to sue the tortfeasor remained with Plaintiffs, notwithstanding State Farm's losing argument in the state court that what it paid Defendant should count against any judgment.  *See Am. Nursing Res., Inc. v. Forrest T. Jones & Co.*, 812 S.W.2d 790, 795 (Mo. Ct. App. 1991) (noting that if an insurer pays policy benefits to a party not legally entitled to them, the insurer does so at its own peril).  Plaintiffs have pointed the Court to no provision in the policy that prohibited Defendant from requesting another insurance company to reimburse it on a voluntary basis.  And, generally speaking, simply asking another person for money or gratuitous payments is not illegal.  *See Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 412 (2000) (Thomas, J., dissenting) ("Not surprisingly, the Courts of Appeals have followed our lead and concluded that the First Amendment protects, for example, begging[.]"); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019); *cf. Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009) (describing the "voluntary payment doctrine," which "prohibits a person who voluntarily pays money with full knowledge of the facts from recovering the money," absent fraud or duress, even if the payment was made "without a sufficient consideration").

Defendant's requests to State Farm and Progressive may properly be referred to as "subrogation" requests or something similar.  But Plaintiffs equivocate when they describe what occurred here as the untimely and unlawful exercise of Defendant's equitable right to subrogation.  What occurred here was not Defendant's exercise of its equitable right to subrogation or even an attempt to exercise its right.  Here, Defendant made a request to another insurance company for payment, and that insurance company voluntarily paid.  *See* 20 Mo. Code

Regs. § 100-1.050(2)(C) (discussing insurers' "[s]ubrogation recoveries" and "subrogation demands" generally and not specifically in the context of an insurer's equitable right to subrogation). Therefore, Defendant is entitled to summary judgment on the breach of contract claim, Count VII.[3] In addition, because Plaintiffs likewise have failed to demonstrate what is "unlawful" or "illegal" about one company asking another company for money to which it is not legally entitled, the Court will not enjoin such conduct or declare it unlawful. Therefore, Defendant also is entitled to summary judgment on Counts I and II.

        c.       *Defendant did not violate its duty of good faith and fair dealing.*

Under Missouri law, a duty of good faith and fair dealing is implied in every contract. *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. banc 2015). "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original) (quoting *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)); *accord Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 190 (Mo. Ct. App. 2017). The purpose of a good faith and fair dealing cause of action is "to prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party." *Rock Port Mkt.*, 532 S.W.3d at 188 (quoting *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012).

Here, Defendant did not exercise a judgment conferred by the express terms of the contract. Plaintiffs do not say what "express terms" of the contract conferred "a judgment" on

---

[3] Under Missouri law, one of the essential elements of a breach of contract is that plaintiff suffered damages. *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). As will be discussed below, Plaintiffs have not shown they were damaged. The contract claim also fails for this reason.

Defendant nor how Defendant exercised said judgment in a manner evading the spirit of the transaction. Further, Defendant did not deny Plaintiffs the expected benefit of the contract. The contract was one of insurance. Plaintiffs submitted their claim for damages under the contract, and Defendant paid Plaintiffs for their losses in accordance with the contract. While Plaintiffs claims fault Defendant for Defendant's actions post-payment, Plaintiffs brought no claim involving Defendant's investigation, valuation, or payment of the claim. Indeed, Plaintiff Hinds referred to Defendant as the "no problem people." Doc. [269] ¶ 8.

Defendant's actions cannot be shoehorned into a violation of the duty of good faith and fair dealing. *See Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) ("The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms."). Defendant is entitled to summary judgment on Count IV.

        d.        *Plaintiffs' claims for unjust enrichment and money had and received fail.*

"Claims for money had and received and unjust enrichment are both founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014); *see also Kubley v. Brooks*, 141 S.W.3d 21, 29 n.8 (Mo. banc 2004) (citing *Fulton Nat'l Bank v. Callaway Mem'l Hosp.*, 465 S.W.2d 549, 553 (Mo. 1971)) (stating that a money had and received claim "is not a suit upon express contract but upon an implied contract created by law"). In Missouri, it is "a well-settled principle of law that implied contract claims arise only where there is no express contract." *Lowe*, 430 S.W.3d at 349; *Femmer v. Sephora USA, Inc.*, No. 4:20-cv-676-JMB, 2021 WL 735685, at *10 (E.D. Mo. Feb. 25, 2021). Thus, a plaintiff cannot recover when there exists an express contract "for the very

subject matter" at issue. *Lowe*, 430 S.W.3d at 349; *accord Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). The parties disagree whether the insurance policy governs "the very subject matter" of Plaintiffs' unjust enrichment and money had and received claims. Regardless, the Court concludes Plaintiffs implied contract claims would fail on their merits.

An action for money had and received lies "where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." *Invs. Title Co. v. Hammonds*, 217 S.W.3d 288, 293–94 (Mo. banc 2007) (quoting *Webster v. Sterling Fin. Co.*, 173 S.W.2d 928, 931 (Mo. 1943)). As established, the money Defendant received from State Farm was *not* Plaintiffs' money. It was a gratuitous payment by State Farm to Defendant. Indeed, the court in the underlying state case specifically found State Farm's payment to Defendant could not be used to decrease the tortfeasor's liability to Plaintiffs. Since Defendant did not hold the legal title to the claim, and had no *right* to the money, State Farm remained liable and, under Missouri law, could not offset any amount it was liable with what it already paid to Defendant. In other words, Plaintiffs were free to continue the case against the tortfeasor as if State Farm's payment to Defendant never even occurred.[4] *See Hagar*, 33 S.W.3d at 611. Thus, Plaintiffs' claim for money had and received fails on the simple ground that the money procured by Defendant from State Farm was not Plaintiffs' money. *See, e.g.*, *Mo. State Emps.' Ret. Sys. v. Salva*, 504 S.W.3d 748, 751 (Mo. Ct. App. 2016) (noting element requires "defendant received or obtained possession *of the plaintiff's money*" (emphasis added)); *Forsthove v. Hardware Dealers Mut. Fire Ins. Co.*, 416 S.W.2d 208, 220 (Mo. Ct. App.

---

[4] In addition, the driver insured by State Farm remained liable for damages he caused beyond the policy limit of his insurance with State Farm. So, if Plaintiffs established liability, not only could they have collected the entire amount of the driver's policy limit since State Farm was not entitled to a set-off, but Plaintiffs could have secured a judgment against the tortfeasor for the entire amount of the damage for which he was liable.

1967) ("In order to sustain an action for money had and received, it must appear that the money in question belonged to plaintiff[.]").

By the same principle, since State Farm was not entitled to an off-set and Plaintiffs could have collected whatever amount the driver was deemed liable notwithstanding State Farm's payment to Defendant, "equity and good conscience" do not dictate Defendant ought to pay what it received over to Plaintiff. One more point to that end. As Plaintiffs acknowledge, insurance companies have the right to recoup payments they make to their insured if the insured's collection from a tortfeasor exceeds the insured's total uninsured losses. *See* Doc. [268] at 7–8 (noting insurers may recover on subrogation claims once "their insureds have recovered their uninsured losses"); *see also Keisker*, 90 S.W.3d at 74 ("By paying the insured, the insurer has a right to subrogation."). Plaintiffs, though, have not put forward evidence that they have any remaining uninsured loss.[5] Without demonstrating they even have uninsured losses remaining, they have no entitlement to the money considering Defendant's right to subrogation on any money in excess of Plaintiffs' losses. Defendant is entitled to summary judgment on Count VI.

"An action for unjust enrichment is very similar to one for money had and received." *Lowe*, 430 S.W.3d at 349. A successful action for unjust enrichment requires: (1) a benefit

---

[5] *See, e.g.*, Doc. [268] at 13 (Plaintiffs stating, without any supporting citation, that they "have not recovered their uninsured losses"); Doc. [268] at 3 n.4 (Plaintiffs calling argument that they suffered no uninsured losses "immaterial"). In their response to Defendant's Statement of Uncontroverted Material Facts, Plaintiffs "den[ied] that Owners' payments to Plaintiffs covered all Plaintiffs' losses." Doc. [269] ¶ 8. However, for that denial, they cite only Plaintiff Hinds's deposition. Even if that were enough, see *Joyce v. Armstrong Teasdale, LLP*, No. 4:08-cv-1390-CEJ, 2012 WL 4464752, at *2 (E.D. Mo. Sept. 26, 2012) (granting summary judgment based on lack of damages noting that owner of property "may" be able to testify regarding the value of property but such testimony "must be admissible and based upon the owner's own knowledge and experience," which plaintiff did not establish), that fact alone misses the mark. Whether *Defendant's* payments to Plaintiffs covered all Plaintiffs' losses is not the issue. The issue is whether Plaintiffs have recovered their entire uninsured losses from all the compensation they received, which includes Defendant's payment, Progressive's payment, and State Farm's payment. *See* Johnny C. Parker, *The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation*, 70 Mo. L. Rev. 723, 737 (2005) ("[W]here the insured's recovery from both the insurer and tortfeasor is less than or equal to its loss the insurer forfeits its right to subrogation.").

conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. *Id.* at 349 n.2. As just discussed, *Plaintiffs* did not confer a benefit on Defendant. And as with the money had and received claim, since Plaintiffs have not pointed the Court to any evidence that their total recovery of $108,168.13[6] did not fully compensate their uninsured loss, they have not shown Defendant's retention of the money even would be inequitable. Defendant is entitled to summary judgment on Count III.

    e.    *Plaintiffs are not entitled to damages.*

Plaintiffs set out compensatory damages and punitive damages as their own counts, Count VIII and Count IX, respectively. Since the Court has concluded that Plaintiffs have no viable claims, they are not entitled to damages. Thus, Defendant is entitled to summary judgment on Count VIII and Count IX.

## CONCLUSION

Defendant's actions, as elucidated through the undisputed facts, neither violated the insurance contract nor the law. Plaintiffs causes of action fail; they are not entitled to a declaratory judgment, injunctive relief, or to compensatory or punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, Doc. [265], is **DENIED**.

---

[6] Plaintiffs received a total of $66,336.27 from Owners for their property damage ($49,965.10) and their lost business income ($16,371.17). Doc. [269] ¶ 6. Owners also later returned $500 of Plaintiffs' deductible not reflected in those numbers. *Id.* ¶ 16. Plaintiffs then received $25,000 from Progressive Insurance, which insured one of the drivers that caused the collision. *Id.* ¶ 27. Then, they received $16,331.86 from State Farm, which insured the other driver. *Id.* ¶ 26. All told, Plaintiffs received $108,168.13.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, Doc. [262], is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 2nd day of August, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE